```
IN THE UNITED STATES DISTRICT COURT FOR THE
      EASTERN DISTRICT OF VIRGINIA

             Alexandria Division


UNITED STATES, ex rel.        )
THYSSENKRUPP SAFWAY, INC.,    )
                              )
    Plaintiff,                )
                              )
        v.                    )   1:10cv512 (JCC/JFA)
                              )
TESSA STRUCTURES, LLC,        )
et al.,                       )
                              )
    Defendants.               )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Vista Contracting, Inc.'s ("Vista"), Motion to Dismiss Defendant Tessa Structure's ("Tessa") Cross-Claim or, in the Alternative, Stay Cross-Claim Pending Mediation and/or Arbitration [Dkt. 26] (the "Motion"). For the following reasons, the Court will grant the Motion.

### I.  Background

A.  <u>Factual Background</u>

This case arises out of a January 2, 2006 contract (the "Contract") between Vista and the FBI Academy Construction Management Team Quantico ("FBI") pursuant to which Vista agreed to perform certain restoration and repair work at the FBI

Academy in Quantico, Virginia. (Mem.[1] at 2.) Vista entered into a June 28, 2007 subcontract (the "Subcontract") with Tessa for the performance of portions of the Contract, including the furnishing of labor and certain supplies. (Mem. at 2; Cross-Cl.[2] ¶ 8.)

Tessa engaged Plaintiff Thyssenkrupp Safway, Inc. ("TSI"), as a supplier of scaffolding for its performance of the Subcontract. (Mem. at 3; Cross-Cl. ¶ 9.) TSI alleges that Tessa failed to tender payment to TSI for the scaffolding and brought the instant suit against defendants Tessa, Vista, and Fidelity and Deposit Company of Maryland ("Fidelity"), the surety on the Miller Act payment bond furnished by Visa to the United States. (Mem. at 3; Compl.[3] ¶¶ 8-9.) Tessa, in turn, alleges in its cross-claim against Vista that Vista failed to tender payment to Tessa for its performance under the Subcontract. (Mem. at 3; Cross-Cl. ¶ 10.)

The Subcontract addresses claims between Vista and Tessa. (Mem. Ex.[4] 1 at 4.) Subparagraph 6.1.1 of Article 6 of the Subcontract provides that "[a]ny claim arising out of or related to this Subcontract, except as otherwise provided in Subparagraph 4.1.5 and except those waived in this Subcontract, *shall* be subject to mediation *as a condition precedent* to

---

[1] Vista's Memorandum in Support [Dkt. 27] of the Motion will be referred to as "Mem."
[2] Tessa's Cross-Claim [Dkt. 23] will be referred to as "Cross-Cl."
[3] TSI's Complaint [Dkt. 1] will be referred to as "Compl."
[4] Exhibits to Vista's Memorandum in Support [Dkt. 27-1] will be referred to as "Mem. Ex. []."

arbitration or the institution of legal or equitable proceedings by either party." (Mem. Ex. 1 at 4 (emphasis added).) Subparagraph 6.1.2 states that the parties "*shall* endeavor to resolve their claims by mediation" and that requests for such mediation

> *shall be filed in writing* with the other party to this Subcontract and the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such an event, *mediation shall proceed in advance of arbitration or legal or equitable proceedings*, which *shall be stayed* pending mediation for a period of 60 days from the date of the filing, unless stayed for a longer period by agreement of the parties or court order.

(Mem. Ex. 1 at 4 (emphasis added).) Subparagraph 6.2.1 provides that "*[a]ny claim* arising out of or related to this Subcontract, except claims as otherwise provided in Subparagraph 4.1.5 and except those waived in this Subcontract, *shall* be subject to arbitration" and that "*[p]rior to arbitration*, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 6.1." (Mem. Ex. 1 at 4 (emphasis added).)

B. Procedural Background

TSI brought suit against Tessa, Vista, and Fidelity on May 18, 2010. [Dkt. 1.] Tessa filed its Answer to TSI's Complaint on December 9, 2010, which contained its three-count Cross-Claim (the "Cross-Claim") against Vista for breach of contract, indemnification, and contribution. [Dkt. 23.] Vista

3

filed the Motion on December 30, 2010.  [Dkt. 26.]  Tessa filed its Opposition (the "Opposition") to the Motion on January 10, 2011.  [Dkt. 29.]  Vista filed its Reply in Support ("Reply") on January 14, 2011.  [Dkt. 31.]  Vista's Motion is now before the Court.

**II.  Standard of Review**

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint.  *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).  In deciding such a motion, a court must first be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  A court must take "the material allegations of the complaint" as admitted and liberally construe the complaint in favor of the plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).  Indeed, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level."  *Id.* at 1965.  In its recent decision,

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court expanded upon *Twombly* by articulating a two-pronged analytical approach to be followed in any Rule 12(b)(6) analysis.  First, a court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to the presumption of truth.  *Id.* at 1951.  "[B]are assertions" that amount to nothing more than a "formulaic recitation of the elements" do not suffice.  *Id.* (citations omitted).  Second, assuming the veracity of "well-pleaded factual allegations," a court must conduct a "context-specific" analysis drawing on "its judicial experience and common sense" and determine whether the factual allegations "plausibly suggest an entitlement to relief." *Id.* at 1950-51.  The plausibility standard requires more than a showing of "a sheer possibility that a defendant has acted unlawfully."  *Id.* at 1949.  In other words, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

### III.  Analysis

Vista argues that the Court should dismiss the Cross-Claim, because the Subcontract requires that Tessa seek mediation and arbitration to resolve any claims arising from the Subcontract prior to filing a suit.  (Mem. at 4-5.)  In the alternative, Vista moves the Court to stay the Cross-Claim

5

pending the outcome of mediation and/or arbitration. (Mem. at 4-5.)

A. Applicability of the FAA

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-15, was intended to "create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Power Sys. & Controls, Inc. v. Schneider Electric USA, Inc.*, No. 3:10CV137, 2010 WL 2384537, at *1 (E.D. Va. June 9, 2010) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)).

Under the FAA, "a court must enforce an arbitration agreement that: (1) comprises part of a written contract between the parties 'if the contract or transaction involves interstate commerce'; (2) pertains to the specific dispute at issue; and (3) is 'valid under general principles of contract law.'" *Airlines Reporting Corp. v. McBride Tours & Travel, Inc.*, No. 1:06cv322, 2006 WL 2079385, at *1 (E.D. Va. July 24, 2006) (quoting *Hendrick v. Brown & Root, Inc.*, 50 F. Supp. 2d 527, 531-32 (E.D. Va. 1999)). An agreement that falls within the ambit of the FAA "is valid, irrevocable, and enforceable," 9 U.S.C. § 3, *see also Gibbs v. PFS Inv., Inc.*, 209 F. Supp. 2d 620, 624 (E.D. Va. 2002), and the FAA requires that when the parties' dispute falls within the scope of such an agreement, the court must stay proceedings and order arbitration. *Power*

*Systems*, 2010 WL 2384537, at *1 (citing *Murray v. United Food & Commercial Workers Int'l Union*, 289 F.3d 297, 301 (4th Cir. 2002)).

The FAA reflects a liberal national policy favoring arbitration agreements. *Koridze v. Fannie Mae Corp.*, 593 F. Supp. 2d 863 (E.D. Va. 2009) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)). Accordingly, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability." *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 204 (4th Cir. 2004) (citing *Moses*, 460 U.S. at 24-25).

This Court has previously held that for the purposes of the FAA, a provision providing for "mediation" carries the same effect as one providing for "arbitration." *See American Tech. Serv., Inc. v. Universal Travel Plan, Inc.*, 2005 WL 2218437, at *2 (E.D. Va. Aug. 8, 2005). At least one circuit, however, has expressly held that for the purposes of the FAA, "mediation" is *not* "arbitration." *Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*, 524 F.3d 1235 (11th Cir. 2008) (finding that mediation is not within the FAA's scope); *see also Tattoo Art, Inc. v. Tat Intern., LLC*, 711 F. Supp. 2d 645, 650

7

n.2 (E.D. Va. 2010) (collecting cases and noting that some courts have found that mediation is a type of alternative dispute resolution falling within the FAA while the 11th Circuit has not).[5] In *American Technology Services, Inc.*, this Court reasoned that "because the contract involved interstate commerce and manifest[ed] the parties' intent to provide an alternative method to 'settle' controversies arising under the [agreement], the dispute resolution clause at issue in that case fit within the FAA's definition of arbitration." *American Techn. Serv., Inc.*, 2005 WL 2218437, at *2 (internal quotation marks and citations omitted). The Court is inclined to apply that same reasoning here, particularly given the Fourth Circuit's admonishment that "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability." *Patten Grading & Paving*, 380 F.3d at 204 (citing *Moses*, 460 U.S. at 24-25).

Here, however, any possible conflict due to the use of "mediation" as opposed to "arbitration" is academic. Though the Subcontract's Subparagraph 6.1.1 addresses "mediation," Subparagraph 6.2.1 clearly provides that "*[a]ny claim* arising out of or related to this Subcontract . . . *shall* be subject to *arbitration*." (Mem. Ex. 1 at 4 (emphasis added).) Thus,

---

[5] The Court found no Fourth Circuit opinion addressing this issue.

regardless of whether the provisions with respect to mediation bring the Subcontract under the ambit of the FAA, Subparagraph 6.2.1's express requirement that the parties *shall* be subject to arbitration does so. That subparagraph clearly manifests the parties' intent to provide an alternative method to resolve controversies arising under the Subcontract. Thus, the Court turns to whether such arbitration is compelled by the FAA.

B. <u>Whether the Dispute Compels Arbitration</u>

Under the FAA, "a court must enforce an arbitration agreement that: (1) comprises part of a written contract between the parties 'if the contract or transaction involves interstate commerce'; (2) pertains to the specific dispute at issue; and (3) is 'valid under general principles of contract law.'" *Airlines Reporting Corp.*, 2006 WL 2079385, at *1 (quoting *Hendrick*, 50 F. Supp. 2d at 531-32).

Here, the Cross-Claim pertains to Vista's alleged failure to pay Tessa as required by the Subcontract and Tessa's resulting failure to pay TSI, its supplier for the performance of the Subcontract. (Cross-Cl. ¶¶ 11-19.) Subparagraph 6.2.1 of the Subcontract broadly provides that "*[a]ny claim* arising out of or related to this Subcontract" shall be subject to arbitration," thus it pertains to the specific dispute at issue here. (Mem. Ex. at 4.) The relevant provision compromises part of a written contract between the parties, the validity of which

9

is not challenged.  As for interstate commerce, the Cross-Claim states that Tessa is a Maryland limited liability company and Vista is a District of Columbia corporation, while the parties contracted to perform work for the FBI in Virginia. Accordingly, the dispute at issue falls within the parameters of the arbitration provision that itself falls within the ambit of the FAA.

In its reply, Tessa concedes that Count I of its Cross-Claim, for breach of contract, is subject to the mediation and arbitration provisions of the Subcontract.  (Opp.[6] at 1.)  As to Count II, for indemnification, and Count III, for contribution, Tessa argues that the Court should resolve these counts, because they relate directly to the underlying claim asserted by TSI against Vista.  (Opp. at 2.)  Because Tessa's claims against Vista for indemnification and contribution cannot be resolved without the Court first determining TSI's claims against Tessa, Vista, and Fidelity, Tessa argues that the Court should ignore the mediation and arbitration provisions of the Subcontract and decide the two remaining counts of the Cross-Claim.  (Opp. at 3.)

Tessa's argument is unavailing.  The plain language of the Subcontract provides that "*any* claim" arising out of it will be subject to arbitration.  (Mem. Ex. 1 at 4.)  Tessa claims for indemnification or contribution are claims arising from the

---

[6] Tessa's Opposition [Dkt. 29] to the Motion will be referred to as "Opp."

Subcontract and, therefore, are within the plain scope of the Subcontract's arbitration and mediation provisions.

Tessa also argues that the efficient resolution of TSI's action against Tessa, Vista, and Fidelity requires the Court to ignore the Subcontract's terms and resolve the Cross-Claim. (Opp. at 3.) Citing this Court's decision *In re Jubilant Voyager Corporation*, No. 81-799-N, 1982 WL 2280, at *1 (E.D. Va. Mar. 18, 1982), Tessa argues that though "arbitration upon demand is the general rule, it has been held that where a party's arbitrable and non-arbitrable claims cannot be practically separated, it may be appropriate to deny arbitration of any of the claims." (Opp. at 3.) Because Tessa's indemnification and contribution claims cannot be decided without first resolving TSI's underlying claims against all defendants, "it is therefore appropriate for the Court to decide all of the claims collectively." (Opp. at 3.) This efficiency argument, however, supports granting a stay or dismissal--whether Tessa's cause of action against Vista for contribution or indemnification exists at all is contingent on the resolution of TSI's underlying claim. *See* Va.Code Ann. § 8.01-249(5) (stating that the cause of action for contribution or for indemnification accrues "when the contributee or the indemnitee has paid or discharged the obligation"); *Lone Mountain Processing, Inc. v. Bowser-Morner, Inc.*, 94 F. App'x 149, 157

11

(4th Cir. 2004) ("[A] cause of action for . . . indemnification accrues when the indemnitee has paid or discharged the obligation."). Thus, Tessa's Cross-Claim *can* be practically separated from the underlying suit, and perhaps may be more efficiently resolved in succession.

    C.   <u>Stay or Dismissal</u>

For the reasons set forth above, the Court finds that the FAA requires the Court to compel the parties to the alternative dispute resolution mechanism set forth in the Subcontract. Thus, the final issue the Court must resolve is whether to dismiss or stay the Cross-Claim.

Section 3 of the FAA provides for a stay of the lawsuit until the parties have completed their alternative dispute resolution. *See* 9 U.S.C. § 3. "Although section 3 of the FAA provides for a stay of any lawsuit until arbitration has been completed, this rule 'was not intended to limit dismissal of a case in the proper circumstances.'" *Johnson v. Carmax, Inc.*, No. 3:10-CV-213, 2010 WL 2802478, at *5 (E.D. Va. July 14, 2010) (quoting *Alford v. Dean Witter Reynolds Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)). While the Cross-Claim is subject to the Subcontract's arbitration provision, Vista has made no showing that this is one of the "proper circumstances" where dismissal, as opposed to a stay, is appropriate. Thus, the Court will stay the Cross-Claim pending the outcome of mediation

or arbitration between Vista and Tessa as provided for in the Subcontract.

## IV. Conclusion

For these reasons, the Court will grant Vista's Motion.

An appropriate Order will issue.

|  | /s/ |
|---|---|
| February 4, 2011 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |