IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES, *ex rel*.          )
THYSSENKRUPP SAFWAY, INC.,        )
                                  )
    Plaintiff,                    )
                                  )
        v.                        )    1:10cv512 (JCC/JFA)
                                  )
TESSA STRUCTURES, LLC,            )
*et al*.,                         )
                                  )
    Defendants.                   )


**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on plaintiff
Thyssenkrupp Safway, Inc.'s ("Safway"), Motion for Summary
Judgment [Dkt. 40] (the "Motion").  For the following reasons,
the Court will grant Safway's Motion.

**I.  Background**

A.  <u>Factual Background</u>

This case arises out of a January 2, 2006 contract
between defendant Vista Contracting, Inc. ("Vista"), and the FBI
Academy Construction Management Team Quantico ("FBI"), pursuant
to which Vista, as general contractor, agreed to perform certain
restoration and repair work at the FBI Academy in Quantico,
Virginia (the "Project").

### i. The Relationship Between Vista and Tessa

Vista entered into a June 28, 2007 subcontract (the "Subcontract") with defendant Tessa Structures, LLC ("Tessa"), pursuant to which Tessa, as subcontractor, agreed to provide certain masonry repair work for the Project. (Vista and Fidelity's Opposition to the Motion [Dkt. 49] ("VF Opp.") at 2.)

### ii. The Relationship Between Safway and Tessa

Tessa in turn hired Safway as a scaffolding supplier for Tessa's performance of the Subcontract, making Safway a sub-subcontractor[1] on the Project. (Safway Statement of Material Facts [Dkt. 41-8] ("S. Facts") ¶ 9; Brief in Support of Safway's Motion [Dkt. 41] ("Mem.") at 2.) To that end, Tessa and Safway entered into "one or more" rental agreements. (S. Facts ¶ 9.) Pursuant to these rental agreements, Safway furnished equipment to Tessa for use in the Project from January 2009 through October 22, 2009. (Mem. at 2; S. Facts ¶ 11.) In accordance with the rental agreements, Safway tendered invoices to Tessa for this work, but, according to Safway, Tessa did not pay the amounts due under invoices for the period from June 2, 2009, to October 2009, totaling $24,889.35. (Mem. at 2; S. Facts ¶ 13.)

---

[1] Tessa was a "first-tier" subcontractor, and Safway was a "second-tier" subcontractor. A "first-tier" subcontractor is subcontractor in privity with the prime or general contractor, placing such a subcontractor on the first level of subcontractors below the prime or general contractor. A "second-tier" subcontractor is in privity with a "first-tier" subcontractor and not the prime or general contractor and is typically referred to as a "sub-subcontractor."

### iii. The Relationship Between Safway, Vista, and Fidelity

As required by the Miller Act, 40 U.S.C. §§ 3131 through 3134, Vista furnished a payment bond to the United States in connection with the Project. (S. Facts ¶ 5.) Vista is the principal on that payment bond, and defendant Fidelity and Deposit Company of Maryland ("Fidelity") is the surety on that payment bond. (S. Facts ¶¶ 6-7.)

Vista and Fidelity dispute whether "the services and equipment supplied by Tessa and [Safway] conformed with *Tessa's [Subcontract]*." (VF Opp. at 3 (emphasis added).)

### iv. The Dispute Between Vista and Tessa

Vista terminated Tessa's Subcontract on October 7, 2009. (VF Opp. at 2.) Vista asserts that from July until its termination on October 7, Tessa's performance under the Subcontract was deficient. *Id*. Tessa filed a three-count cross-claim against Vista for breach of contract, indemnification, and contribution, [Dkt. 23], which the Court stayed pending arbitration, [Dkt. 34].

### B. Procedural Background

Safway filed suit against Tessa, Vista, and Fidelity on May 18, 2010. [Dkt. 1.] Safway filed its Motion for Summary Judgment on March 11, 2011. [Dkt. 40.] Tessa filed an Opposition to the Motion on March 22, 2011, [Dkt. 47], and Vista and Fidelity opposed the Motion on March 25, 2011, [Dkt. 49].

Plaintiff's Motion for Summary Judgment is before the Court.

## II. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted). The party seeking summary judgment has the initial burden of showing the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The party opposing summary judgment may not rest upon mere allegations or denials. Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quotation omitted).

Unsupported speculation is not enough to withstand a motion for summary judgment. *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

### III. Analysis

Safway asserts two grounds for relief in its Complaint. First, against only Tessa, Safway asserts a claim for breach of contract ("Count One"). Second, against Vista and Fidelity, Safway asserts a claim for payment pursuant to the Miller Act ("Count Two"). The Court will address each in turn.

### A. Count One: Breach of Contract Claim Against Tessa

An initial matter, the Court is exercising supplemental jurisdiction over Plaintiff's state law breach of contract claim pursuant to 28 U.S.C. § 1367(a) and accordingly must apply Virginia law. *Johnson v. Hugo's Skateway*, 974 F.2d

1408, 1416 n.7 (4th Cir. 1992); *Brown v. Mitchell*, 327 F. Supp. 2d 615, 628 n.27 (E.D. Va. 2004).

In Virginia, the elements of a claim for breach of contract are (1) a legally enforceable obligation of the defendant to the plaintiff, (2) a violation or breach of that obligation by the defendant, and (3) an injury or harm to the plaintiff caused by the defendant's breach. *Ulloa v. QSP, Inc.*, 271 Va. 72, 79 (2006). None of these elements are in dispute. Tessa does not contest that it and Safway entered into an enforceable contract and that it failed to pay Safway. And, Tessa's failure to pay indisputably injured Safway.

Tessa argues that "there exists a genuine dispute of material fact as to whether Vista contests that [Safway] properly provided scaffolding or other equipment to the project." (Tessa's Opposition to the Motion [Dkt. 47] ("T. Opp.") at 3.) Tessa goes on to argue that because Vista asserts that *Tessa's* work for the Project was deficient and because a dispute of fact remains as to whether *Tessa's* allegedly deficient work "includes the scaffolding or any other equipment provided by Safway" to the Project, summary judgment as to Count One is inappropriate because a dispute exists as to whether Safway "is entitled to recover for the amounts claimed in this action." (T. Opp. at 3.) Tessa's argument is flawed.

Tessa, significantly, does not assert that Safway failed to perform under the rental agreements between *Tessa and Safway*, for example by providing deficient scaffolding. But, even assuming, *arguendo*, that Safway breached its rental agreements with Tessa, only a *material* breach of a contract excuses performance by the non-breaching party. *See Horton v. Horton*, 254 Va. 111, 115-16 (1997). "A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Id*. at 115. Whether a breach is material is a fact-specific inquiry, and the "evidence required to establish a material breach of contract will vary depending on the facts surrounding a particular contract." *Id*. at 116.

Here, viewing the facts in the light most favorable to Tessa, no reasonable juror could find that any purported breach by Safway of its contracts with Tessa was material, thereby excusing Tessa from paying Safway. This is so because Tessa has provided no evidence whatsoever of any breach on the part of Safway other than its own assertion to that effect. Instructive, but not dispositive, is that although Tessa counterclaimed against Vista for breach of contract, it did not counterclaim against Safway. Thus, without any evidence to support its claim, Tessa's bare assertion that Safway breached the rental agreements is not enough to withstand a motion for

summary judgment. *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986). Accordingly, the Court will grant summary judgment as to Count One.

B.  Count Two: Miller Act Claim Against Vista and
     Fidelity

Under the Miller Act, before the federal government awards a general contractor a contract in an amount greater than $100,000, the general contractor is required to obtain a payment bond "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract." 40 U.S.C. § 3131(b)(2). The Miller Act provides that "[a] person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the [general] contractor furnishing the payment bond," *i.e.*, a sub-subcontractor, such as Safway here, "may bring a civil action on the payment bond on giving written notice[2] to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made." 40 U.S.C. § 3133(b)(2). The Miller Act also creates liability for a surety on a general contractor's Miller Act payment bond, but "the surety company's liability is derivative of the [general] contractor's liability to the plaintiff." *Artistic Stone Crafters v. Safeco Ins. Co.*, 726 F. Supp. 2d 595,

---

[2] The parties do not contest whether Safway gave proper notice.

604 (E.D. Va. 2010) (citing *United States v. Seaboard Sur. Co.*,
817 F.2d 956, 962 (2d Cir. 1987)).

"To state a valid Miller Act claim, a plaintiff must
prove essentially two elements: (1) it has 'furnished labor or
material in carrying out work provided for in a contract for
which a payment bond is furnished under section 3131'; and (2)
it 'has not been paid in full within 90 days.'" *United States
ex rel. Tenn. Valley Marble Holding Co. v. Grunley Constr.*, 433
F. Supp. 2d 104, 114 (D.D.C. 2006) (quoting 40 U.S.C. §
3133(b)(1)). The Miller Act is "highly remedial" and,
therefore, is entitled to a "liberal construction and
application in order properly to effectuate the Congressional
intent to protect those whose labor and materials go into public
projects." *Clifford F. MacEvoy Co. v. United States ex rel.
Calvin Tomkins Co.*, 322 U.S. 102, 107 (1944). Though entitled
to liberal construction, "[w]hile the Miller Act is certainly
meant to protect those who supply materials for public projects,
the statute was not meant to entitle the supplier to more than
it is 'justly due.'" *Tenn. Valley Marble*, 433 F. Supp. 2d at
114; *see also United States ex rel. Acoustical Concepts, Inc. v.
Travelers Cas. and Sur. Co. of America*, 635 F. Supp. 2d 434, 439
n.6 (E.D. Va. 2009) ("Under the prior version of the Miller Act,
a subcontractor on a federal construction project was entitled
to the 'sums justly due' for providing labor and materials. *See*

40 U.S.C. § 270(b)(1) (2001). The 2002 amendments to the Miller Act were not intended to change the substance of the Act.")

Vista and Fidelity argue that summary judgment is inappropriate for three reasons. (VF Opp. at 5.) First, they argue that Safway "claims rental cost for equipment used by Tessa to perform work that was not in accordance" with the Subcontract, *i.e.*, that because *Tessa* was in breach of the Subcontract, *Safway* is not entitled to recover under the Miller Act payment bond. *Id*. Second, as Tessa was terminated from the Project on October 7, 2009, any rental costs claimed after that date "include invoices for services [Safway] performed after [Safway's] contractual link to the Project had been severed." *Id*. Third, Vista argues that it paid Tessa for the amounts due to Safway. *Id*. The Court will address each of these arguments in turn.

First, with respect to whether a Tessa's alleged breach of the Subcontract affects the Safway's right to recover under the Miller Act Bond, Vista and Fidelity's argument is one for the defense of recoupment. *See United Structures v. G.R.G. Eng'g, S.E.*, 9 F.3d 996, 998 (1st Cir. 1993) ("'Recoupment' . . . is 'a reduction or rebate by the defendant of part of the plaintiff's claim because of a right in the defendant arising out of the same transaction.'") (quoting Black's Law Dictionary 1147 (5th ed. 1979)). There appears to be some disagreement

among the circuit courts as to the availability to a defendant
general contractor of a recoupment defense against a plaintiff
supplier or sub-subcontractor when the general contractor is not
in privity with the supplier. *Compare United Structures*, 9 F.3d
at 999-1000 (explaining that recoupment is "an appropriate
defense in Miller Act cases" for a general contractor and "may
reduce the award" to a supplier), *with United States ex rel.
Martin Steel Constructors v. Avanti Steel Constructors*, 750 F.2d
759, 762 (9th Cir. 1984) (holding that where the supplier and
general contractor are not in privity, the Miller Act forbids
the general contractor from raising a recoupment-like "set-off"
defense for supplier's defective shipments). This issue appears
to be one of first impression in the Fourth Circuit, as the
parties did not provide and the Court found no cases addressing
the availability of a recoupment defense in situations such as
this one.

Vista and Fidelity's recoupment defense would fail
even assuming this Court were to adopt the First Circuit's rule
laid out in *United Structures*[3] and permit Vista and Fidelity to
raise the defense for the amounts Safway seeks for the period
during which Vista and Fidelity allege that Tessa was in breach
of the Subcontract, "[f]rom early July until [Tessa's] ultimate

---

[3] *See Tenn. Valley Marble,* 433 F. Supp. 2d at 116 (adopting the First Circuit
rule laid out in *United Structures* and permitting a recoupment defense where
defendant general contractor was not in privity with plaintiff supplier); *see
also Acoustical Concepts, Inc.*, 635 F. Supp. 2d at 442 (describing *United
Structures* as "the leading circuit court decision" on the availability of a
recoupment defense in a Miller Act case) (Ellis, J.).

termination on October 7, 2009."[4]  (VF Opp. at 5.)  As then-Judge

Breyer noted in *United Structures*, a recoupment defense is

available "insofar as [the general contractor] shows that [the

supplier] delivered defective goods that failed to meet contract

specifications and proves reasonably foreseeable damages caused

by those defects."  9 F.3d at 1000.  Here, Vista and Fidelity

have provided no evidence that Safway was in breach of its

rental agreements with Tessa or that Safway provided any

deficient scaffolding to the Project.

When asked by the Court at oral argument regarding the

Motion whether Vista and Fidelity had any affidavits,

depositions, or evidence in the record to support their

contention that Safway provided deficient scaffolding to the

Project, counsel for Vista and Fidelity acknowledged that they

did not have any affidavits or depositions, but directed the

Court to an e-mail, dated July 2, 2009, between representatives

of Vista and Tessa.  (VF Opp. Exhibit ("Ex.") D [Dkt. 49-4].)

That e-mail provides no support that *Safway* provided deficient

scaffolding.  All that e-mail and its attachment, a document

entitled "List of work that needs to be finished for Tessa

Structures," shows is that Vista communicated to *Tessa* that

certain masonry repair work was outstanding.  Nothing in the

record connects this e-mail to Safway, and, as conceded by Vista

and Fidelity's counsel at oral argument, nothing other than this

---

[4] Safway provided equipment to Tessa beginning in January, 2009.  (Mem. at 2.)

e-mail supports their contention that Safway provided deficient scaffolding to the project.

Second, with respect to whether Safway can recover under the Miller Act for equipment it provided to Tessa after Tessa had been terminated from the Project, this likewise does not preclude Safway's recovery on the bond. As the Fourth Circuit has stated, "[i]f the supplier reasonably believes, in good faith, that the material furnished is to be used in the bonded project, he has the protection of the bond." *United States ex rel. Sunbelt Pipe Corp. v. U.S. Fidelity and Guar. Co.*, 785 F.2d 468, 470 (4th Cir. 1986) (citing *United States ex rel. Westinghouse Elec. Supply Co. v. Endebrock-White Co.*, 275 F.2d 57, 60-61 (4th Cir. 1960)). Here, Safway has the protection of the bond because no reasonable juror could find that it did not supply scaffolding in the reasonable, good faith belief that it was to be used in the Project. Nothing in the record indicates that Vista or Tessa informed Safway that Tessa has been terminated. The evidence in the record shows only that Vista sent a termination notice to Tessa. (VF Opp. at 5; VF Opp. Ex. C [Dkt. 49-3].) Nothing--no affidavit, deposition testimony, or other evidence--shows that Vista or Tessa notified Safway of Tessa's termination or that Safway had or could have had any notice of Tessa's termination.

Third, with respect to whether the Vista's alleged payment to Tessa of the sums due to Safway relieves Vista of liability to Safway under the Miller Act bond, this argument does not defeat summary judgment. Vista "contends that it paid Tessa for the amounts Safway invoiced to Tessa." (VF Opp. at 5.) For support, Vista cites to a "condition" in the Miller Act payment bond that states that "[Vista's] obligation is void if [Vista] promptly makes payment to all persons having a direct relationship with [Vista] or a subcontractor of [Vista] for furnishing labor, material or both in the prosecution of the work." (Mem. Ex. 2 [Dkt. 41-2].) This "condition" was not satisfied. Pursuant to the condition, Vista's obligation would be void if Vista were to pay "*all persons* having a direct relationship with [Vista] *or a subcontractor* of [Vista]," (Mem. Ex. 2 [Dkt. 41-2] (emphasis added)), *i.e.*, Vista's obligation would be void if Vista were to pay *all* persons having a relationship with Vista or a relationship with subcontractors on the Project. Here, no evidence in the record illustrates that Vista paid Safway.

Moreover, "[t]he obligation of the surety and contractor includes amounts owed by subcontractors to their suppliers. The fact that a subcontractor has been paid in full does not eliminate liability to the supplier." *United States ex rel. Maddux Supply Co. v. St. Paul Fire & Marine Ins. Co.*, 86

F.3d 332, 334 (4th Cir. 1996) (internal quotation marks and citations omitted). Thus, even assuming Vista paid Tessa for the amounts owed to Safway, these payments do not relieve Vista of liability under the Miller Act payment bond.

Further, Vista and Fidelity's support for this argument is that Vista made "these payments" to Tessa pursuant to lien releases provided by Tessa to Vista. (VF Opp. at 5.) Vista and Fidelity provide only one such lien release, dated September 8, 2009, between Tessa and Vista for a "progress payment" in the amount of $4,242.36, by which Tessa waives all liens it may have against Vista, certifies that it has paid all suppliers, and indemnifies Vista against all liens or demands that all suppliers may have against Vista for equipment furnished under the Subcontract. (VF Opp. Ex. B [Dkt. 49-2].) The record, then, shows only that on one occasion, Vista and Tessa executed a lien release wherein *Tessa* certified that *it* paid Safway. Safway, of course, has sued Tessa for failure to pay invoices, and, notably, Tessa's Opposition does not contest Safway's claim that Tessa failed to pay these invoices. To the extent Tessa certified to Vista that Tessa paid Safway, that is a matter between Tessa and Vista, not between Vista and Safway.

In sum, taking the evidence in the light most favorable to Vista and Fidelity, summary judgment is appropriate with respect to Safway's Miller Act claim in Count Two of its Complaint.

C.    Remedy

For the reasons set forth above, it is clear to the
Court that Safway is entitled to summary judgment with respect
to Tessa's liability under Count One, for breach of contract,
and Vista and Fidelity's liability under Count Two, pursuant to
the Miller Act.  Safway seeks $24,889.35 in unpaid invoices,
interest on the unpaid invoice amount at a rate of 1.50% per
month, attorneys' fees, and costs of collection.  (Mem. at 2-3.)
The Court now turns to the question of the proper remedy.

i.    Defendants' Arguments as to Amounts
Recoverable

Defendants make two arguments in their respective
oppositions contesting certain items in Safway's claim for
recovery.  Significantly, Defendants contest only certain
portions of the total sought by Safway, though they do so only
in the abstract, as they do not contest any specific dollar
amounts.

Tessa argues that Safway is not entitled to any
amounts attributable to damaged equipment because Tessa's
personnel were not on the Project site when Safway removed the
allegedly damaged equipment and therefore were unable to inspect
the equipment to verify the extent of any damage.  (T. Opp. at
3.)  Tessa asserts that this creates a genuine dispute as to
whether Safway can recover for the alleged damaged equipment

and, even if so, in what amount.  (T. Opp. at 3.)  Vista and

Fidelity join Tessa in this argument.  (VF Opp. at 6.)

With respect to Tessa's argument, whether Safway may

recover the amounts sought for damaged equipment under Count One

is governed by Virginia contract law.  Under Virginia law, "[i]n

a breach of contract case, the damages recoverable 'are such as

may fairly and reasonably be considered as arising naturally--

that is, according to the usual course of things--from the

breach of contract itself, or such as may reasonably be supposed

to have been in the contemplation of both parties at the time

they made the contract.'"  *Johnson v. Washington*, No. 2:07cv204,

2008 WL 850690, at *4 (E.D. Va. Mar. 12, 2008) (quoting *Sinclair*

*Refining Co. v. Hamilton & Dotson*, 164 Va. 203, 209 (1935)).

"'The remedy for breach of contract is intended to put the

injured party in the same position in which it would have been

had the contract been performed.'"  *Id.* (quoting *Marefield*

*Meadows, Inc. v. Lorenz*, 245 Va. 255, 261 (1993)).

Here, it is clear as a matter of law that damages for

damaged or lost equipment would have been contemplated by Tessa

and Safway at the time they entered into the rental agreements.

The rental agreements provide that "[i]n the event of damages,

loss, modification or destruction of the [equipment] rented

hereunder, or any part thereof, whether or not such event is the

fault of [Tessa], [Tessa] shall pay to [Safway] a sum equal to

17

[Safway's] current list price for any and all such [equipment]."
(Mem. Ex. 1 [Dkt. 41-1].)  The parties clearly contemplated
payment for damaged or lost equipment when they entered into the
rental agreements.

Tessa counters that it "was unable to inspect the
equipment for damage or otherwise verify the amount of such"
damages and equipment shortages.  (T. Opp. at 3.)  That Tessa
could not "verify" the damaged equipment and other shortages
does not prevent Safway from recovering the amounts
contractually due.  That the equipment was not damaged would
prevent such recovery, but Tessa has presented no evidence to
that effect.  Tessa does not create a genuine dispute as to
whether the equipment was in fact damaged by merely asserting
that it did not have an opportunity to verify that fact.
Accordingly, Safway may recover amounts attributed to damaged
equipment.

With respect to Vista and Fidelity, whether Safway may
recover against them for the damaged equipment under Count Two
is governed by the Miller Act.  The Miller Act provides
"protection of all persons supplying *labor and material* in
carrying out the work provided for in the contract."  40 U.S.C.
§ 3131(b)(2) (emphasis added).  "[T]he cost of capital equipment
is not considered 'labor or material' under [the Miller Act]"
and, thus, is not recoverable under the Miller Act.  *United*

18

*States ex rel. Skip Kirchdorfer v. Aegis/Zublin Joint Venture*, 869 F. Supp. 387, 394 (E.D. Va. 1994); *see also Transamerica Premier Ins. Co. v. Ober*, 894 F. Supp. 471, 483 (D. Me. 1995) ("It is clear under the statute and case law that subcontractors and suppliers may not recover under a Miller Act payment bond for losses sustained to 'capital equipment.'").  Although "the *cost* of equipment is not covered, *rent* for equipment used in the performance of the work is generally considered to be recoverable" under the Miller Act.  *Skip Kirchdorfer*, 869 F. Supp. at 394.  "[S]mall repairs that do not substantially add to the value of the equipment" are also recoverable.  *Id.* at 395.

Safway's scaffolding is "capital equipment," as "[a] thing which may reasonably be expected to be removed by the contractor and used in subsequent jobs is a part of the contractor's capital equipment, but something which is reasonably expected to have no utility or economic value to the contractor after the completion of the work may be classified as material."  *Sunbelt Pipe Corp.*, 785 F.2d at 470.  "[I]n distinguishing between material and capital equipment, [courts] approach the problem from the perspective of the reasonable expectation of the supplier."  *Id.*  Here, from the perspective of Safway's reasonable expectation, it expected to remove its scaffolding and use it in subsequent jobs, as Safway *rented* the scaffolding to Tessa for use in the Project, retaining ownership

of the scaffolding. (Mem. Ex. 1 [Dkt. 41-1].) Rented equipment has utility or economic value to the lessor after the completion of the project for which that equipment is leased. Thus, because the scaffolding was capital equipment, Safway is not permitted to recover the cost of that equipment under the Miller Act bond.

As noted above, however, "small repairs that do not substantially add to the value of the equipment" are recoverable. *Skip Kirchdorfer*, 869 F. Supp. at 395. Accordingly, any sums Safway claims for such "small repairs" would be recoverable.

In reviewing Safway's proffered "Statement of Account," (Mem. Ex. 4 [Dkt. 41-4]), it does not appear to the Court that Safway seeks any amount for damaged or unreturned equipment. The itemized "shortage notice" presenting "pieces of equipment [that] were short," (Mem. Ex. 3, [Dkt. 41-3, at p. 28]), is invoice number 39471, dated October 22, 2009, in the total amount of $4,491.42. Neither that invoice number nor that invoice amount appears in Safway's "Statement of Account." But, to the extent the "Statement of Account" reflects a sum for the cost of lost capital equipment, Safway is unable to recover that sum from Vista and Fidelity, for the reasons set forth above.

Vista and Fidelity argue that Safway is not entitled to invoice Tessa for $2,552.55 for services. (VF Opp. at 5.)

By its terms, the Miller Act provides "protection of all persons

supplying *labor* . . . in carrying out the work provided for in

the contract."  40 U.S.C. § 3131(b)(2) (emphasis added).  Vista

and Fidelity do not argue to the contrary, instead arguing only

that Safway's rental agreements with Tessa do not provide for

any charge for services.  (VF Opp. at 5.)  The rental

agreements, however, provide for "trucking charge[s]" of

$175.00, which include 30 minutes of loading or unloading time,

and $85.00 per hour thereafter.  (Mem. Ex. 1 [Dkt. 41-1].)

Thus, the rental agreements provide that Safway will render

certain services.  Vista and Fidelity have provided no evidence

contesting the amount invoiced for those services, and their

unsupported assertion that Safway is not entitled to that sum

does not create a genuine dispute of material fact as to that

sum.

### ii.    Interest and Attorneys' Fees

Safway seeks interest and attorneys' fees and costs

from Tessa, under Count One, and from Vista and Fidelity, under

Count Two.  Defendants do not contest these claims.

"The Miller Act does not, by its own terms, provide

for attorneys' fees or interest."  *Maddux Supply Co.*, 86 F.3d

332 at 336.  The Fourth Circuit, in *Maddux Supply*, noted that

"[s]everal circuits have held, however, that interest and

attorneys' fees are recoverable if they are part of the contract

21

between the subcontractor and supplier." *Id*.  The *Maddux Supply* Court reasoned that "[t]he rationale of those decisions--that attorney[s'] fees and interest may be 'sums justly due' under the Miller Act--is consistent with [the Fourth Circuit's] rulings that contractors and their sureties are obligated to pay amounts owed by their subcontractors to suppliers."  Then, affirming the district court's grant of interest and attorneys' fees, the *Maddux Supply* Court held that "[a]ccordingly, if [the supplier] was entitled to interest and attorney[s'] fees under its contract with [the subcontractor], it may recover interest and fees from [the general contractor] and [its surety]."  *Id.*

Here, Safway is entitled to interest, attorneys' fees, and costs under its rental agreements with Tessa.  Accordingly, it may recover these fees from Defendants.

As to interest, the rental agreements provide that interest will be charged on all overdue invoices at a rate of 1.50% per month.  (Mem. Ex. 1 [Dkt. 41-1].)  Pursuant to the rental agreements, rental payments were due "[n]et 10 days from date of invoice."  (Mem. Ex. 1 [Dkt. 41-1].)  The first invoice Tessa failed to pay was dated June 2, 2009, so the invoice became overdue as of June 12, 2009, ten days from the date of the invoice.  Thus, Safway is entitled to interest at a rate of 1.50% per month on the principal amount of $24,889.35, from June

12, 2009, to the date of the Order accompanying this Memorandum Opinion.

As to attorneys' fees, the rental agreements provide that if Safway proceeds in court to enforce the rental agreements, it is entitled to recover all "expenses which [it] has sustained, including without limitation, attorneys' fees." (Mem. Ex. 1 [Dkt. 41-1].) The Court will order Safway to submit a petition for reasonable attorneys' fees, as the party requesting fees bears the burden of demonstrating the reasonableness of the fees it seeks to recover. *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990); *Cook v. Andrews*, 7 F. Supp. 2d 733, 736 (E.D. Va. 1998). Safway's petition shall include a breakdown of hours billed and other information relevant to the factors set forth in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978), and other applicable law.

### IV. Conclusion

For these reasons, the Court will grant Plaintiff's Motion for Summary Judgment.

An appropriate Order will issue.

/s/

James C. Cacheris

April 27, 2011
Alexandria, Virginia

UNITED STATES DISTRICT COURT JUDGE