IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES, *ex rel*.          )
THYSSENKRUPP SAFWAY, INC.,        )
                                  )
    Plaintiff,                    )
                                  )
        v.                        )    1:10cv512 (JCC/JFA)
                                  )
TESSA STRUCTURES, LLC,            )
*et al.*,                         )
                                  )
    Defendants.                   )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on plaintiff
Thyssenkrupp Safway, Inc.'s ("Safway") Petition for Attorneys'
Fees [Dkt. 56] (the "Petition").  For the following reasons, the
Court will grant fees in the amount of $15,783.17.

## I.  Background

### A.  Factual Background

This case arises out of a January 2, 2006 contract
between defendant Vista Contracting, Inc. ("Vista"), and the FBI
Academy Construction Management Team Quantico ("FBI"), pursuant
to which Vista, as general contractor, agreed to perform certain
restoration and repair work at the FBI Academy in Quantico,
Virginia (the "Project").[1]

---

[1] This background is drawn from the Court's April 27, 2011 Memorandum Opinion.
[Dkt. 53.]

Vista entered into a June 28, 2007 subcontract (the "Subcontract") with defendant, subcontractor Tessa Structures, LLC ("Tessa"), pursuant to which Tessa agreed provide certain masonry repair work for the Project. Tessa in turn engaged Safway as a supplier of scaffolding for Tessa's performance of the Subcontract.

As required by the Miller Act, 40 U.S.C. §§ 3131 through -3134, Vista furnished a payment bond to the United States in connection with the Project. Vista is the principal on that payment bond, and defendant Fidelity and Deposit Company of Maryland ("Fidelity") is the surety on that payment bond.

B.   Procedural Background

Safway brought suit against Tessa, Vista, and Fidelity on May 18, 2010. [Dkt. 1.] Safway asserted two grounds for relief in its Complaint. First, against only Tessa, Safway asserted a claim for breach of contract. Second, against Vista and Fidelity, Safway asserted a claim for payment pursuant to the Miller Act. Safway sought $24,889.35 in unpaid invoices, with interest at a rate of 1.50% per month, attorneys' fees, and costs of collection.

Safway filed a Motion for Summary Judgment on March 11, 2011. [Dkt. 40.] In an April 27, 2011 Order, the Court granted summary judgment in favor of Safway in the amount of $24,889.35. [Dkt. 54.] The Court also awarded Safway interest

at a rate of 1.50% per month on the principal amount of $24,889.35, compounded monthly, from June 12, 2009, to the date of the Order granting summary judgment. *Id*. The Court also ordered Safway to submit a petition for reasonable attorneys' fees. *Id*.

Safway submitted its Petition on May 11, 2011. [Dkt. 56.] Vista and Fidelity filed an opposition on May 27, 2011. [Dkt. 59.] Tessa did not oppose.

Plaintiff's Petition is before the Court.

## II. Standard of Review

### A. Attorneys' Fees Under the Miller Act

"The Miller Act does not, by its own terms, provide for attorneys' fees or interest." *United States ex rel. Maddux Supply Co. v. St. Paul Fire & Marine Ins. Co.*, 86 F.3d 332, 336 (4th Cir. 1996). The Fourth Circuit, in *Maddux Supply*, noted that "[s]everal circuits have held, however, that interest and attorneys' fees are recoverable if they are part of the contract between the subcontractor and supplier." *Id*. The *Maddux Supply* Court reasoned that "[t]he rationale of those decisions--that attorney[s'] fees and interest may be 'sums justly due' under the Miller Act--is consistent with [the Fourth Circuit's] rulings that contractors and their sureties are obligated to pay amounts owed by their subcontractors to suppliers." Then, affirming the district court's grant of interest and attorneys'

fees, the *Maddux Supply* Court held that "[a]ccordingly, if [the supplier] was entitled to interest and attorney[s'] fees under its contract with [the subcontractor], it may recover interest and fees from [the general contractor] and [its surety]." *Id.*

As stated in the Court's April 27, 2011 Memorandum Opinion, Safway is entitled to interest, attorneys' fees, and costs under its rental agreements with Tessa. Accordingly, it may recover these fees from Defendants.

### B. Standard for Attorneys' Fees

The party requesting fees bears the burden of demonstrating the reasonableness of what it seeks to recover. *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990); *Cook v. Andrews*, 7 F. Supp. 2d 733, 736 (E.D. Va. 1998). The fee applicant bears the burden of establishing by clear and convincing evidence the amount of a reasonable fee in the circumstances. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The requesting party does so by producing evidence, such as the requesting attorneys' own affidavits. "'In addition to the attorney's own affidavits, [however,] the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.'" *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009) (quoting *Plyler*, 902 F.2d

4

at 277). "Examples of what constitutes satisfactory specific evidence 'sufficient to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community.'" *Textron Financial Corp. v. AIC of Manassas, Inc.*, No. 1:09-cv-1202, 2010 WL 2928789, at *4 (E.D. Va. July 23, 2010) (quoting *Robinson*, 560 F.3d at 245); *see also Plyler*, 902 F.2d at 278 ("[A]ffidavits testifying to [the fee applicants'] own rates, experience and skills as well as affidavits of South Carolina lawyers who were familiar both with the skills of some of the [fee] applicants and more generally with civil rights litigation in South Carolina . . . [were] sufficient evidence of the prevailing market rates.")

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994). The product of the reasonable fee and reasonable rate is referred to as the "lodestar amount." *See Daly v. Hill*, 790 F.2d 1071, 1076 n.2 (4th Cir. 1986).

In determining "what constitutes a 'reasonable' number of hours and rate . . . a district court's discretion should be guided by the . . . twelve factors" adopted from *Johnson v. Ga.*

*Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).
*Robinson*, 560 F.3d at 243-44 (citing *Barber v. Kimbrell's Inc.*,
577 F.2d 216, 226 n.28 (4th Cir. 1978)).

Those *Johnson/Kimbrell* factors are: (1) the time and
labor expended; (2) the novelty and difficulty of the questions
raised; (3) the skill required to properly perform the legal
services rendered; (4) the attorney's opportunity costs in
pressing the instant litigation; (5) the customary fee for like
work; (6) the attorney's expectations at the outset of the
litigation; (7) the time limitations imposed by the client or
circumstances; (8) the amount in controversy and the results
obtained; (9) the experience, reputation, and ability of the
attorney; (10) the undesirability of the case within the legal
community in which the suit arose; (11) the nature and length of
the professional relationship between attorney and client; and
(12) attorneys' fees awards in similar cases. *Id.* The Court
need not address all twelve factors independently, because "such
considerations are usually subsumed within the initial
calculation of hours reasonably expended at a reasonable hourly
rate." *Freeman v. Potter*, No. 7:04cv276, 2006 WL 2631722, at *2
(W.D. Va. 2006) (citing *Hensley*, 461 U.S. at 434 n.9).

"After determining the lodestar figure, the court then
should subtract fees for hours spent on unsuccessful claims
unrelated to successful ones. . . . [O]nce the court has

subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Robinson*, 560 F.3d at 244 (internal quotations and citations omitted). Because the "degree of success obtained by the plaintiff is the 'most critical factor' in determining the reasonableness of a fee award, the district court 'may simply reduce the award to account for the limited success.'" *Lilienthal v. City of Suffolk*, 322 F. Supp. 2d 667, 675 (E.D. Va. 2004) (quoting *Hensley*, 461 U.S. at 436-37). There is no "precise formula" for making this reduction to the lodestar amount; however, the court may either "reduce the overall award" or "identify specific hours that should be eliminated." *Hensley*, 461 U.S. at 436-37.

Attorneys' fee award decisions are within the discretion of the district court and are reviewed for abuse of discretion. *See McDonnell v. Miller Oil Co.*, 134 F.3d 638, 640 (4th Cir. 1998). Within this framework, the Court will evaluate the Petition.

### III. Analysis

Safway seeks $19,388.37 in attorneys' fees. (Petition ("Pet.") [Dkt. 56] at 1.) In support, Safway provides "[c]opies of invoices from [Safway]'s counsel," which " provide an itemized statement of all tasks performed and the amount of time

billed for each." *Id.* As additional support, Safway "submits the affidavits of its attorneys, Paul Sweeney and Michael J. Jack attesting to the reasonableness of the fees incurred." *Id.*

In opposition, Vista and Fidelity argue that the Petition should be denied in its entirety because Vista and Fidelity's liability is secondary to Tessa's, "the undisputed bad actor in this matter," and, in the alternative, to the extent the Petition is granted, the fee award should be reduced because (i) the requested fees are excessive, (ii) the task descriptions provided by Safway's counsel are "fatally deficient," and (iii) the requested fees reflect tasks "having nothing to with Vista and/or Fidelity." (Opposition ("Opp.") [Dkt. 59] at 1.)

A.   Reasonableness of the Number of Hours

The Court first must determine whether plaintiff met its burden of establishing the reasonableness of the number of hours and billing rate for which it seeks recovery. The Court notes that it was mindful of Plaintiff's duty to exercise billing judgment and paid careful attention to identifying hours appearing excessive, redundant, or unnecessary. *See Hensley*, 461 U.S. at 437 ("The applicant should exercise 'billing judgment' with respect to hours worked."). With these considerations in mind, the Court will analyze the

reasonableness of the hours under each of the *Johnson/Kimbrell's* factors.

### i.    First Factor: Time and Labor Expended

The first *Johnson/Kimbrell's* factor relates to the time and labor required in the case.  Safway seeks $19,388.37 in attorneys' fees, but it did not provide any summary stating the total number of hours billed, by what attorneys, and for what hourly charge.  Instead, Safway provides a print out of the attorneys' invoices.  (Pet. Ex. 1 [Dkt. 56-1].)  On the Court's review of those invoices, the summary of the hours and fees is as follows:

| Attorney | Hours | Rate | Fee |
|---|---|---|---|
| Michael J. Jack | 47.20 | $295.00 | $13,924.00 |
| Paul Sweeney | 10.40 | $385.00 | $4,004.00 |
| J. Beckman | 4.60 | $85.00 | $391.00 |
| Patti Gomez | 4.20 | $140.00 | $588.00 |
| Totals | 66.40 | | $18,907.00 |

Safway submits affidavits from its two counsel, Michael J. Jack and Paul Sweeney, in support of the reasonableness of its fee request.  (Pet. Exs. 2-3.)  Those affidavits each assert that "[t]he amounts of time billed for the various functions and tasks performed are normal and reasonable."  (Jack Affidavit ("Aff.") [Dkt. 56-3] ¶ 4; Sweeney Aff. [Dkt. 56-2] ¶ 4.)

In response, Vista and Fidelity argue that the fees sought are excessive, because two senior litigators worked on this case despite the relatively small amount sought in the case

(less than $25,000), despite the fact that Safway did not propound discovery, and despite the fact that no trial was held. (Opp. at 2.) Vista and Fidelity also argue that Safway "made the choice to retain counsel . . . licensed to practice law in Maryland--not Virginia--and thereby brought about the need for a Virginia co-counsel in this matter." *Id*. "Vista and Fidelity should not be required to pay for such duplicative efforts when this matter could easily have been handled by one attorney." *Id.*

The Court finds that the time entries do not appear excessive, redundant, or unnecessary and no reduction is required under this factor. A total of 66.40 hours to litigate a case through a grant of summary judgment, over nearly one year and over 50 docket entries, does not seem an unreasonable amount of time and labor to the Court. With respect to Vista and Fidelity's argument that Safway chose to employ a Maryland practitioner thereby requiring additional, local counsel, a party has a right to freely choose counsel. *See, e.g.*, *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 730 (E.D. Va. 1990). Moreover, this practice is common in this and other courts, and given that Maryland counsel, Michael J. Jack, billed the majority of the total hours, some 47.20 or the 66.40 total, this arrangement does not appear unreasonable here as opposed to in other instances.

Vista and Fidelity also argue that they should not be liable for fees incurred on litigation "having nothing to do with them." (Opp. at 4.) Specifically, argue Vista and Fidelity, certain invoice entries by Messrs. Jack and Sweeney pre-date Vista and/or Fidelity's involvement in this matter. *Id*. Vista and Fidelity concede, however, that they are parties here because of the remedies available to Safway under the Miller Act. *Id*. That is precisely why Vista and Fidelity are liable for all fees in this case. As stated in this Court's April 27, 2011 Memorandum Opinion, "the Miller Act is . . . meant to protect those who supply materials for public projects." *United States ex rel. Tenn. Valley Marble Holding Co. v. Grunley Constr.*, 433 F. Supp. 2d 104, 114 (D.D.C. 2006). And where, as here, if the supplier (Safway) is entitled to interest and attorneys' fees under its contract with the subcontractor (Tessa), it may recover interest and fees from the general contractor (Vista) and its surety (Fidelity). *Maddux Supply Co.*, 86 F.3d 332 at 336. Accordingly, the Court will not reduce the number of hours based on time and labor spent before Vista and Fidelity's involvement.

####### ii. Second, Third, and Ninth Factors: Novelty and Difficulty of the Questions Raised, Skill Required to Properly Perform the Legal Service Rendered, and Experience, Reputation, and Ability of the Attorney

Safway asserts that this "case involved somewhat specialized knowledge (construction law and the Miller Act)." (Jack Aff. ¶ 4; Sweeney Aff. ¶ 4.) Vista and Fidelity do not specifically contest this assertion, aside from arguing that this matter "could easily have been handled by one attorney." (Opp. at 2.) The Court finds that although this case involved the Miller Act, this litigation did not present any particularly complex or novel questions of law or require a unique skill set. Indeed, the case turned more on questions of fact than intricate questions of Miller Act law. That said, counsel demonstrated that they had the proper experiences, skills, and legal acumen required to successfully present this case. Ultimately, this factor will not affect the Court's fee determination.

####### iii. Fourth Factor: Attorneys' Opportunity Costs in Pressing the Instant Litigation

The Court need not consider the fourth factor because neither Safway nor Vista and Fidelity address it, and the Court agrees that it is not significant to this case. Though the total hours spent on this matter appear reasonable to the Court, the time spent does not seem to the Court to have been so voluminous to have precluded other representation on the part of

Safway's counsel.  Thus, this factor will not affect the Court's determination.

iv. <u>Fifth Factor: Customary Fee for Like Work</u>

Safway submits affidavits from its two counsel, Michael J. Jack and Paul Sweeney, in support of the reasonableness of its fee request.  (Pet. Exs. 2-3.)  The invoices provided by Safway reflect that Mr. Jack's hourly rate is $295.00 and Mr. Sweeney's hourly rate is $385.00, for the year-2011 hours, and $375.00, for the year-2010 hours.  (Pet. Ex. 1.)  The invoices further reflect that "J. Beckman" and "Patti Gomez" also billed time to this case, at hourly rates of $85.00 and $140.00, respectively.  *Id.*  Vista and Fidelity do not dispute these rates and provide no contrary evidence.  The Court, however, will nonetheless address this factor.

The prevailing party's requested hourly rates must be reasonable.  *Rum Creek Coal Sales, Inc.*, 31 F.3d at 175 (citing *Hensley*, 461 U.S. at 433).  The determination of the reasonableness of given rates is a "fact-intensive [one] and is best guided by what attorneys earn from paying clients for similar services in similar circumstances."  *Id.* (*citing Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  To carry this burden, a plaintiff can establish the market rate "through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information

13

concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of the actual rates which counsel can command in the market." *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987) (citations omitted). This evidence must be submitted "[i]n addition to the attorney's own affidavits." *Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir. 1990).

Messrs. Jack and Sweeney's affidavits state that "[t]he hourly rates charged by the two attorneys involved in representing [Safway] are well within the range of those customarily charged by experienced practitioners." (Pet. Exs. 2 ¶ 4, 3 ¶ 4.) Mr. Jack's affidavit states that he is "familiar with the hourly rates customarily charged by civil litigators and construction attorneys in this geographic area," (Pet. Ex. 3 ¶ 3), and Mr. Sweeney's states that he is "familiar with the hourly rates customarily charged by civil litigators in this geographic area," (Pet. Ex. 2 ¶ 3). Neither affidavit, however, provides any information as to the two other (presumably) attorneys involved, J. Beckman and Patti Gomez.

"[M]erely relying upon an attorney's own affidavit is insufficient to establish an acceptable market rate for attorneys' fees under this factor." *United States, ex rel. Ubl v. IIF Data Solutions*, No. 1:06cv641, 2010 WL 1726767, at *8 (E.D. Va. April 28, 2010). "[A]mong the accepted types of

evidence which are satisfactory to establish the prevailing market rates are 'affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community.'" *Id.* (quoting *Robinson*, 560 F.3d at 245). Accordingly, because all that it provided were its own attorneys' affidavits, Safway has not carried its burden of proving the reasonableness of the sought fees by clear and convincing evidence.

The Court's own inquiry into the reasonable of the fees is based on recent decisions of the Court. In *IIF Data Solutions*, this Court reviewed two versions of the "Laffey Matrix,"[2] one published by the United States Attorney's Office for the District of Columbia[3] and one known as the "Adjusted Laffey Matrix,[4]" and a table of fees outlined in *Grissom v. The Mills Corp.*, 549 F.3d 313 (4th Cir. 2008), which it dubbed the "Grissom Table." *IIF Data Solutions,* 2010 WL 1726767, at *8-9. "[T]he Laffey matrix is a useful starting point to determine fees, not a required referent." *Newport News Shipbuilding and*

---

[2] The Laffey Matrix is used as a guideline for reasonable attorney fees in the Washington/Baltimore area. *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. E. Sign Tech, LLC*, 2006 U.S. Dist. LEXIS 72345, at *7 (E.D. Va., Oct. 4, 2006) (using the *Laffey* matrix as evidence of reasonableness). The matrix is hosted on the website of the United States Attorney's Office for the District of Columbia. *See* http://www.justice.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_8.html. The rates are adjusted for cost of living and are based on rates found reasonable in *Laffey v. Nw. Airlines*, 746 F.2d 4, 24-25 (D.C. Cir. 1985), *overruled in part on other grounds by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988).
[3] The Court will refer to this matrix as the "Unadjusted Laffey Matrix."
[4] *Khair v. Countrywide Home Loans, Inc.*, No. 1:10-cv-410, 2011 WL 1304916, at *5 (E.D. Va. Apr. 1, 2011).

*Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 n.11 (4th Cir. 2009).

The two Laffey matrices are set forth below:

| Unadjusted Laffey Matrix | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| *Year* | 03-04 | 04-05 | 05-06 | 06-07 | 07-08 | 08-09 | 09-10 | 10-11 |
| *Experience* | *Fees* | | | | | | | |
| 20+ years | $380 | $390 | $405 | $425 | $440 | $465 | $465 | $475 |
| 11-19 years | $335 | $345 | $360 | $375 | $390 | $410 | $410 | $420 |
| 8-10 years | $270 | $280 | $290 | $305 | $315 | $330 | $330 | $335 |
| 4-7 years | $220 | $225 | $235 | $245 | $255 | $270 | $270 | $275 |
| 1-3 years | $180 | $185 | $195 | $205 | $215 | $225 | $225 | $230 |
| Paralegals & Law Clerks | $105 | $110 | $115 | $120 | $125 | $130 | $130 | $135 |

| Adjusted Laffey Matrix | | | | | | |
|---|---|---|---|---|---|---|
| | *Experience* | | | | | |
| | Paralegal/Law Clerk | 1 to 3 Years | 4 to 7 Years | 8-10 Years | 11 -19 Years | 20 + Years |
| *Year* | *Fees* | | | | | |
| 6/01/10-5/31/11 | $161 | $294 | $361 | $522 | $589 | $709 |
| 6/01/09-5/31/10 | $155 | $285 | $349 | $505 | $569 | $686 |
| 6/01/08-5/31/09 | $152 | $279 | $342 | $494 | $557 | $671 |
| 6/01/07-5/31/08 | $146 | $268 | $329 | $475 | $536 | $645 |
| 6/01/06-5/31/07 | $139 | $255 | $313 | $452 | $509 | $614 |
| 6/1/05-5/31/06 | $136 | $249 | $305 | $441 | $497 | $598 |
| 6/1/04-5/31/05 | $130 | $239 | $293 | $423 | $476 | $574 |

The Fourth Circuit, in *Grissom*, looked to the Unadjusted Laffey Matrix in evaluating fees in the Northern Virginia area and, while recognizing its use as a starting point in evaluating fees, adjusted the applicable market rates as indicated in the table provided below. *Grissom*, 549 F.3d at 323.

| Grissom Table | | |
|---|---|---|
| *Title* | *Years' Experience* | *Hourly Rate* |
| Partner | 18-19+ | $335.00-380.00 |
| Associate | 6-7 | $250.00 |
| Associate | 5-6 | $250.00 |
| Associate | 2-3 | $200.00 |
| Associate | 1 | $180.00 |

*See IIF Data Solutions*, 2010 WL 1726767, at *9. The analysis set forth in *IIF Data Solutions* provides a useful benchmark for the present case. Accordingly, the Court makes the following findings with respect to the attorneys here, "bearing in mind each of these resources, but giving the greatest heed to the Fourth Circuit's guidance in *Grissom*." *Id.*

With respect to Mr. Jack, Safway seeks fees in the amount of $295.00 per hour. (Pet. Ex. 1.) Mr. Jack has 30 years' experience practicing general civil litigation, with concentration in construction law, including mechanics liens and surety bond claims, and he has tried to verdict several hundred cases and has had sole or primary responsibility in several thousand cases or matters. (Pet. Ex. 3 ¶ 2.) According to the Unadjusted Laffey Matrix, the hourly rate for an attorney with 20+ years' experience is $475.00, while the Adjusted Laffey Matrix puts that figure at $709.00. The Grissom Table puts the rate for an attorney with 19+ years' experience at $380.00. Moreover, this Court in *IIF Data Solutions* awarded fees of $400.00 for counsel with over thirty years' experience, and this Court has more recently found that $350.00 and $375.00 for

counsel with 31 years of experience and $400.00 for counsel with 36 years' experience was reasonable in light of the Grissom Table. *IIF Data Solutions*, 2010 WL 1726767, at *9; *BP Products North America, Inc. v. Stanley*, No. 1:09cv1147, 2010 WL 3473791, at *2 (E.D. Va. September 1, 2010). Thus, and in consideration of the record before the Court, an hourly rate of $295.00 is appropriate for Mr. Jack.

With respect to Mr. Sweeney, Safway seek fees in the amount of $385.00 or $375.00 per hour. (Pet. Ex. 1.) Mr. Sweeney has 21 years' experience practicing civil litigation, insolvency, bankruptcy, and related litigation. (Pet. Ex. 2 ¶ 2.) According to the Unadjusted Laffey Matrix, the hourly rate for an attorney with 20+ years' experience is $475.00, while the Adjusted Laffey Matrix puts that figure at $709.00. The Grissom Table puts the rate for an attorney with 19+ years' experience at $380.00, slightly below the rate requested. As stated above, this Court recently awarded fees of $400.00 for counsel with over thirty years' experience and more recently found that $350.00 and $375.00 for counsel with 31 years of experience and $400.00 for counsel with 36 years' experience was reasonable in light of the Grissom Table. *IIF Data Solutions*, 2010 WL 1726767, at *9; *BP Products North America*, 2010 WL 3473791, at *2. In light of this, and in light of Mr. Jack's fee of $295.00--according to his affidavit, a more specialized attorney

in the field of construction and surety bond law--an hourly rate of $295.00 is also appropriate for Mr. Sweeney.

Next, as to J. Beckman and Patti Gomez, Safway provides no information as to their experience or even whether they are attorneys (though presumably they are).  With no information whatsoever as to J. Beckman and Patti Gomez, the Court will not include fees attributable to them in calculating the ultimate fee amount.

v.      Sixth Factor and Seventh Factors: Attorneys'
        Expectations at the Outset of the Litigation
        and Time Limitations Imposed by the Client
        or Circumstances

The Court need not consider the sixth and seventh *Johnson* factors, because neither Safway nor Vista and Fidelity address them, and the Court agrees that neither is significant to this case.  Thus, these factors will not affect the Court's determination.

vi.     Eighth Factor: Amount in Controversy and the
        Results Obtained

As noted above, "the degree of success obtained by the plaintiff is the 'most critical factor' in determining the reasonableness of a fee award." *Lilienthal*, 322 F. Supp. 2d at 675 (quoting *Hensley*, 461 U.S. at 436-437).  In its Complaint, Safway sought a $25,000.00 judgment against Vista and Fidelity, along with pre-judgment interest, attorneys' fees, and costs. [Dkt. 1.]  This Court granted summary judgment in favor of Safway in the amount of $24,889.35, along with pre-judgment

interest, attorneys' fees, and costs. [Dkt. 54.] This was a successful result, and the Court considers that success accordingly in determining the ultimate fee award.

   vii.   Factors Ten, Eleven, and Twelve:
          Undesirability of the Case, Nature and
          Length of the Professional Relationship
          Between Attorney and Client, and Attorneys'
          Fees Awards in Similar Cases

Neither Safway nor Vista and Fidelity addressed these factors. Thus, the Court need not and does not consider these factors in its analysis to either increase or decrease the attorneys' fees amount sought by Plaintiffs.

   B.   Lodestar and Reduction

"Guided by [the *Johnson/Kimbrell*] factors, the court should determine how many hours were reasonably spent on the litigation and the rate at which that work should be compensated." *Toolchex, Inc. v. Trainor*, No. 08-cv-236, 2009 WL 2244486, at *6 (E.D. Va. July 24, 2009). "On that basis, the court can determine a 'lodestar figure,' which may be adjusted further." *Id*. The following table summarizes the hours billed, which the Court has found reasonable, and the reasonable rates as addressed above.

| Name | Hours | Reasonable Rate | Total |
|------|-------|-----------------|-------|
| Michael J. Jack | 47.20 | $295.00 | $13,924.00 |
| Paul Sweeney | 10.40 | $295.00 | $3,068.00 |
| J. Beckman | 0.00 | N/A | N/A |
| Patti Gomez | 0.00 | N/A | N/A |
| *Lodestar* | | | $16,992.00 |

The Court will further reduce this figure by 10 percent of the lodestar amount, *i.e.* by $1,699.20, to arrive at an award of attorneys in the amount of $15,292.80, due to the inadequacy of Safway's Petition and its supporting documentation.

The Court notes that in its April 27, 2011 Memorandum Opinion as to Safway's motion for summary judgment, the Court cautioned Safway that:

> the party requesting fees bears the burden of demonstrating the reasonableness of the fees it seeks to recover. *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990); *Cook v. Andrews*, 7 F. Supp. 2d 733, 736 (E.D. Va. 1998). Safway's petition shall include a breakdown of hours billed and other information relevant to the factors set forth in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978), and other applicable law.

(Memorandum Opinion [Dkt. 53] at 23.) Safway's Petition does not address the *Kimbrell's* factors and other applicable law, as expressly directed by the Court. Indeed, it cites no case law at all. The Petition likewise provides no summary of total hours billed or other guidance aside from attaching copies of the attorneys' invoices as an exhibit.

Moreover, "'[i]n addition to the attorney's own affidavits, the fee applicant *must produce* satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.'" *Robinson*, 560 F.3d at 244 (emphasis added) (quoting *Plyler*, 902 F.2d at 277). "Typically, a party seeking attorneys' fees would

present an affidavit from a local counsel not connected to the present litigation who would offer testimony concerning prevailing local rates for the relevant type of work." *In re Outsidewall Tire Litig.*, 748 F. Supp. 2d 557, 567 (E.D. Va. 2010).

As Judge Ellis has cautioned, "inadequate documentation is a proper basis for reducing a fee award." *Outsidewall Tire Litig.*, 748 F. Supp. 2d at 566 n.24. This Petition, given the Court's direction in its Memorandum Opinion, the wholesale reliance on the attorneys' raw invoices, and the lack of affidavits or other evidence of reasonableness beyond the attorneys' own affidavits, is inadequate. Accordingly, the Court will reduce the lodestar amount by 10 percent, as set forth above.

### C.   Costs

In the invoices Safway provides, it appears that Safway also seeks to recover $490.37 in costs for Mr. Jack's pro hac vice application, this Court's clerk fee, various mailing costs, and Pacer online fees. (Pet. Ex. 1.). Because recovery of costs is expressly provided in the rental agreements, as stated in this Court's April 27, 2011 Memorandum Opinion, the Court finds that Safway is entitled to recover $490.37 in costs.

D.   <u>Summary</u>

For the reasons stated above, this Court finds that the number of hours billed by Michael J. Jack (47.20) and Paul Sweeney (10.40) are reasonable, but finds no support for awarding fees for those hours billed by J. Beckman and Patti Gomez.  Thus, the total number of hours is 57.60.  Also for the reasons stated above, the Court finds Mr. Jack's fee of $295.00 to be reasonable and a fee of $295.00 to be likewise appropriate for Mr. Sweeney.  Thus, the appropriate lodestar amount is $16,992.00.

For the reasons stated above, the Court will reduce the lodestar amount by 10 percent, or $1,699.20, to arrive at an attorneys' fee award of $15,292.80.

The Court will award $490.37 in costs, to arrive at a total award of $15,783.17.  Vista, Fidelity, and Tessa will be jointly and severally liable to Safway in this amount.  *Textron*, 2010 WL 2928789, at *7.

## IV.  Conclusion

For these reasons, the Court will grant the Petition in the amount of $15,783.17.

An appropriate Order will issue.

_____/s/_____
James C. Cacheris

July 5, 2011
Alexandria, Virginia        UNITED STATES DISTRICT COURT JUDGE